1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN  DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RAMON OBAS,                                    )   Case No.: 09-CV-05540-LHK
                                              )
                     Plaintiff,               )   ORDER GRANTING IN PART AND
        v.                                    )   DENYING IN PART DEFENDANTS'
                                              )   MOTION FOR SUMMARY JUDGMENT
COUNTY OF MONTEREY; CONAN                     )
HICKEY; BRYAN HOSKINS;                        )
AND DOES 1-50, INCLUSIVE,                     )
                     Defendants.              )
                                              )
                                              )
                                              )
_____)

        On October 23, 2008, Plaintiff Ramon Obas jumped from a second story balcony and was

immediately arrested by members of the Monterey County Joint Gang Task Force.  Although

Plaintiff repeatedly complained of pain in his legs, Emergency Medical Technicians (EMTs) called

to the scene observed no visible signs of injury.  Rather than immobilizing Plaintiff on a backboard

and transporting him by ambulance to the hospital, Monterey County Sheriff's Office Deputies

Conan Hickey and Bryan Hoskins lifted Plaintiff to his feet and required him to walk, with some

assistance, to a patrol car.  Subsequent medical examination revealed a displaced fracture of

Plaintiff's right tibial plateau.  Plaintiff claims that the actions of Deputies Hickey and Hoskins

caused or exacerbated his injuries, and he therefore brings this action against the County of

Monterey and Defendants Hickey and Hoskins for excessive use of force, battery, and negligence.

The case is now before the Court on Defendants' motion for summary judgment, which Plaintiff has opposed.  The Court heard oral argument on January 27, 2011.  Based on the submissions and arguments of the parties, the Court grants in part and denies in part Defendants' motion for summary judgment.

### I.  Background

#### A.  Undisputed Facts

While the parties strongly contest certain details of Plaintiff's arrest and transport, the basic contours of the incident giving rise to this action are undisputed.  In the months leading up to October 2008, the Monterey County Gang Task Force had attempted to apprehend Plaintiff Ramon Obas on several occasions without success.  On October 23, 2008, members of the Task Force organized a tactical operation to apprehend Plaintiff at a two-story apartment complex located at 10525 Seymour Street, in Castroville, California, where Plaintiff was expected to appear.  That night, two Task Force members, Defendant Hickey and California Department of Corrections and Rehabilitation ("CDCR") Special Agent John Jefferson, were waiting in an unmarked car in the parking lot of the complex when they observed Plaintiff ascending the stairs to the second floor of the complex.  Hickey and Jefferson notified the other Task Force members by radio and then got out of the car and approached the stairs.  When Plaintiff noticed the two men approaching him, he jumped from the second-floor balcony onto the pavement below, a distance of some ten to thirteen feet.  Hickey and Jefferson arrested Plaintiff approximately where he landed and handcuffed him with his hands behind his back.

Plaintiff complained of pain in his legs, and a call was placed for medical assistance.  Shortly thereafter, firefighters and trained EMTs Ken Ash, Michael Vindhurst, and Jonathan Ruskell arrived at the scene.  Vindhurst and Ruskell exposed both of Plaintiff's legs, conducted a basic physical examination, and found no objective, visible signs of injury.  Although an ambulance had been summoned, it was called off.  Defendants Hickey and Hoskins then lifted Plaintiff to his feet and assisted him, supporting some amount of his weight, as he walked to a waiting patrol car.  As Plaintiff and Defendants walked to the patrol car, Plaintiff continued to

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    complain of pain in his legs, though he did not scream or yell in pain.  None of the EMT-

2    firefighters intervened or suggested the Plaintiff should be reexamined, and at no point after he

3    jumped from the second-floor balcony did Plaintiff resist, act belligerently, or attempt to get away

4    from the officers.

5           After Defendants Hoskins and Hickey placed Plaintiff in the patrol car, Monterey County

6    Sherriff's Office Deputy Charles West and Task Force member Michael Muscutt drove off with

7    Plaintiff, intending to take him to the county jail for booking.  During the drive, however, Plaintiff

8    continued to complain that his legs hurt, and West and Muscutt decided instead to take him to

9    Natividad Medical Center for a pre-booking medical examination.  At the hospital, medical staff

10   noted a deformity of Plaintiff's right tibia, and x-rays revealed a displaced fracture of Plaintiff's

11   right tibial plateau.

12               **B.  Disputed Facts**

13          The disputed issues of fact center on three main areas.  First, the parties dispute whether

14   Plaintiff knew that Defendants Hickey and Jefferson were law enforcement officers when he

15   noticed them approaching the stairs of the apartment complex and whether he fled to avoid being

16   apprehended by the police.  Defendants maintain that Hickey and Jefferson identified themselves

17   as officers and that Plaintiff jumped off the balcony in order to evade them.  They point out that in

18   his deposition testimony, Plaintiff acknowledged that he was on parole on the night of his arrest

19   and that the conditions of his parole required him to stay away from Ermila Cortez, who lived in

20   the apartment complex.  Plaintiff also acknowledged that he had a parole warrant for failing to

21   report to his parole officer.  Defendants thus argue that Plaintiff knew that Hickey and Jefferson

22   were law enforcement officers and jumped from the balcony to avoid apprehension.  In contrast,

23   Plaintiff claims that he believed Hickey and Jefferson were coming to attack him and that he

24   jumped from the balcony railing because he feared for his life.  He contends that Hickey and

25   Jefferson rapidly approached the stairs with guns drawn and did not identify themselves as law

26   enforcement officers.  Plaintiff also claims that he did not know whether there was an active

27   domestic violence restraining order prohibiting him from visiting the apartment complex.

28

United States District Court
For the Northern District of California

3

1    Second, the parties dispute whether the EMT-firefighters recommended that Plaintiff be

2   transported in an ambulance with cervical spine ("C-spine") restraints to immobilize him and

3   prevent further injury, or "cleared" Plaintiff for transport via patrol car.  Plaintiff maintains that at

4   least one of the EMTs recommended to Defendants Hickey and Hoskins that Plaintiff be placed in

5   C-spine precautions and transported in an ambulance, and that Defendants rejected this

6   recommendation and had the ambulance called off.  Defendants, on the other hand, claim that the

7   EMT-firefighters never recommended that Plaintiff be placed in C-spine precautions, that they

8   cleared Plaintiff to be transported by law enforcement personnel, and that Fire Captain Ash called

9   off the ambulance of his own volition.  Defendants contend that, at most, one of the EMT-

10  firefighters may have offered, to an unidentified officer, to place Plaintiff in C-spine precautions,

11  without actually recommending that such precautions should be taken.

12   Third, the parties dispute facts surrounding Plaintiff's walk to the patrol car, including the

13  distance he was required to walk, how much of his weight Defendants supported, and how much

14  pain Plaintiff appeared to be experiencing.  Plaintiff claims that when the officers placed him on

15  his feet, he made a grunting sound "like sucking air through his teeth" and felt a pop that coincided

16  with a sharp increase in pain.  Pl.'s Opp'n 8.  He claims that during the walk to the patrol car, he

17  complained loudly that his legs hurt, told the officers that he could not walk, and was visibly

18  limping.  Plaintiff, who weighed about 195 to 220 pounds at the time, also claims that Defendants

19  supported only about thirty percent of his weight, and that he was forced to walk approximately 75

20  to 100 feet to the patrol car.  In contrast, Defendants claim that Plaintiff did not act like a person

21  who was in excruciating pain and argue that arrestees often complain of pain, whether or not they

22  have been seriously injured.  They claim that the officers supported a substantial portion of

23  Plaintiff's weight and estimate that Plaintiff was assisted in walking between 25 and 50 feet to the

24  patrol car.

25  **II. Legal Standard**

26   Summary judgment should be granted if there is no genuine issue of material fact and the

27  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

28

4

477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case, and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-560 (2006).

The moving party has the initial burden of production for showing the absence of any material fact.  *Celotex*, 477 U.S. at 331.  The moving party can satisfy this burden in two ways.  "First the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*  Once the moving party has satisfied its initial burden of production, the burden of proof shifts to the nonmovant to show that that there is a genuine issue of material fact.  A party asserting that a fact is genuinely disputed must support that assertion by either citing to particular parts of materials in the record or by showing that the materials cited by the moving party do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c).  The nonmovant must go beyond its pleadings "and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

**III. Discussion**

    **A.  Section 1983 Claim**

Plaintiff's federal cause of action asserts a claim pursuant to 28 U.S.C. § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment rights to be free of unreasonable searches and

United States District Court
For the Northern District of California

1    seizures.[1]  SAC ¶ 34.  Plaintiff's Section 1983 claim is alleged against both Defendant Monterey

2    County and individual Defendants Hickey and Hoskins.

### 1.  *Monell* liability of Monterey County

4            Under *Monell v. Department of Social Services of City of New York*, local governments are

5    considered "persons" for purposes of Section 1983 and may be held liable for monetary damages in

6    cases where "the action that is alleged to be unconstitutional implements or executes a policy

7    statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

8    officers." 436 U.S. 658, 690 (1978).  A local government may not be sued under a theory of

9    respondeat superior for injuries inflicted solely by its employees or agents.  *Monell*, 436 U.S. at

10   691; *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  Rather, a plaintiff must

11   demonstrate that the government's official policy or custom was the "moving force" responsible

12   for infliction of her injuries.  *Monell*, 436 U.S. at 694.  In his opposition brief and at oral argument,

13   Plaintiff conceded that discovery revealed no policy or custom on the part of Monterey County that

14   led to the alleged constitutional violations.  Pl.'s Opp'n to Defs.' Mot. for Summary Judgment

15

16   [1] There appears to be some confusion as to whether Plaintiff's claim is properly brought under the
     Fourth Amendment or as a substantive due process claim.  Generally, the Fourth Amendment
17   reasonableness standard applies to actions taken by law enforcement officers in the course of an
     arrest or seizure, while the deliberate indifference standard under the Due Process Clause of the
18   Fourteenth Amendment applies to the treatment by prison officials of pretrial detainees.  *Estate of
     Phillips v. City of Milwaukee*, 123 F.3d 586, 596 (7th Cir. 1997).  Other courts have noted that it is
19   somewhat awkward to characterize a failure to provide appropriate medical care as excessive force.
     *Price v. County of San Diego*, 990 F. Supp. 1230, 1241 n.22 (S.D. Cal. 1998); *Estate of Phillips*,
20   123 F.3d at 595.  However, the Supreme Court has stated that "*all* claims that law enforcement
     officers have used excessive force . . . in the course of an arrest, investigatory stop, or other
21   'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'
     standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S.
22   386, 395 (1989).  Accordingly, courts have treated the failure to provide medical care during and
     immediately following an arrest as a claim of excessive force under the Fourth Amendment.  *See
23   Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1097-99 (9th Cir. 2006) (analyzing
     failure to provide CPR to handcuffed arrestee under the Fourth Amendment); *Estate of Phillips*,
24   123 F.3d 586, 595-96 (concluding that *Graham* requires claims of failure to provide medical
     attention during arrest to be analyzed under the Fourth Amendment reasonableness standard);
25   *Price*, 990 F. Supp. at 1241 & n.22 (analyzing failure to give CPR after arrest as excessive force
     claim).  In addition, it appears that Plaintiff's claim is not so much that Defendants failed to
26   provide medical care, but that the force Defendants used in lifting Plaintiff to his feet and requiring
     him to walk to the patrol car caused or exacerbated his injuries.  Accordingly, the Court agrees
27   with Plaintiff that the claim should be analyzed under the Fourth Amendment reasonableness
     standard.

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   ("Pl.'s Opp'n") 1, ECF No. 71.  Accordingly, the Court GRANTS summary judgment in favor of

2   Defendant Monterey County on Plaintiff's Section 1983 claim.

### 2. Claim against Individual Defendants

4          Defendants argue that Defendants Hickey and Hoskins should also be granted summary

5   judgment on Plaintiff's Section 1983 claim because they are entitled to qualified immunity.  The

6   doctrine of qualified immunity protects government officials "from liability for civil damages

7   insofar as their conduct does not violate clearly established statutory or constitutional rights of

8   which a reasonable person would have known."  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

9   Because qualified immunity is an immunity from suit, rather than a defense to liability, it is

10  effectively lost if a case is erroneously permitted to go to trial.  *Id.*  For this reason, the Supreme

11  Court has stressed the importance of resolving immunity questions at the earliest possible stage in

12  litigation.  *Id.*  Therefore, if, drawing all reasonable inferences in favor of the nonmoving party, it

13  is clear as a matter of law that the defendants are entitled to qualified immunity, summary

14  judgment should be granted.  *See Wilkinson v. Torres*, 610 F.3d 546, 548 (9th Cir. 2010) (reversing

15  denial of summary judgment where defendants were entitled to qualified immunity as a matter of

16  law).  Where a defendant's entitlement to qualified immunity turns on genuinely disputed issues of

17  fact, however, summary judgment is not appropriate.  *See Espinosa v. City and County of San*

18  *Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming denial of summary judgment because there

19  were genuine issues of fact regarding whether officers violated plaintiff's Fourth Amendment

20  rights and whether those rights were clearly established); *Serrano v. Francis*, 345 F.3d 1071, 1077

21  (9th Cir. 2003) ("If a genuine issue of material fact exists that prevents a determination of qualified

22  immunity at summary judgment, the case must proceed to trial.").

23          In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part approach

24  for analyzing qualified immunity.  The analysis contains both a constitutional inquiry and an

25  immunity inquiry.  *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003).  The

26  constitutional inquiry requires the court to determine this threshold question: "Taken in the light

27  most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

28

**United States District Court**
For the Northern District of California

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1  violated a constitutional right?" *Saucier*, 533 U.S. at 201.  If the Court determines that a

2  constitutional violation could be made out based on the parties' submissions, the second step is to

3  determine whether the right was clearly established.  *Id.*  "The relevant, dispositive inquiry in

4  determining whether a right is clearly established is whether it would be clear to a reasonable

5  officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.

6      The Supreme Court recently held that the *sequence* of analysis set forth in *Saucier* is not

7  mandatory and that a court may exercise its sound discretion in determining which of the two

8  prongs of the qualified immunity analysis to address first.  *Pearson*, 129 at 818.  However, the

9  Court indicated that the sequence set forth in *Saucier* is often appropriate, *id.*, and both parties

10 suggest that it may be appropriate here.  Defs.' Mot. 9; Pl.'s Opp'n 13-14.  Accordingly, the Court

11 will first address the constitutional inquiry and then determine whether the right was clearly

12 established.

### a.   Constitutional Inquiry

14     The Fourth Amendment does not prohibit a law enforcement officer's use of reasonable

15 force during an arrest.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("the right to make an

16 arrest or investigatory stop necessarily carries with it the right to use some degree of physical

17 coercion or threat thereof to effect it").  The reasonableness of any particular use of force is judged

18 "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

19 hindsight."  *Id.*  The inquiry is an objective one, and the question is whether the officers' actions

20 were "'objectively reasonable' in light of the facts and circumstances confronting them, without

21 regard to their underlying intent or motivation."  *Id.* at 397.  In determining whether an officer's

22 actions were objectively reasonable, the court must consider "the severity of the crime at issue,

23 whether the suspect poses an immediate threat to the safety of the officers or others, and whether

24 he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396; *see also Tatum v.*

25 *City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006).  The determination

26 requires careful attention to the facts and circumstances of the particular case and a careful

27 balancing of the individual's liberty interest against the government's interest in the application of

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

*United States District Court*
For the Northern District of California

1    force. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Because such balancing "nearly always

2    requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the

3    Ninth Circuit has "held on many occasions that summary judgment . . . in excessive force cases

4    should be granted sparingly." *Id.*

5          Plaintiff's Fourth Amendment cause of action is based on the claim that it was objectively

6    unreasonable for Defendants Hickey and Hoskins to ignore the recommendations of EMT-

7    firefighters, to pull Plaintiff to his feet, and to force him to walk to the patrol car despite his

8    persistent complaints of pain and an obvious limp. Pl.'s Opp'n 14; SAC ¶¶ 16-17. Defendants

9    move for summary judgment on the ground that, based on the information available to them at the

10   time, the actions of Defendants Hickey and Hoskins were objectively reasonable.

11         In support of their motion, Defendants rely on the deposition testimony of Plaintiff,

12   Defendants Hickey and Hoskins, Deputy Charles West, and EMT-firefighters Ash, Ruskell, and

13   Vindhurst. They note that the EMT-certified firefighters arrived at the scene within minutes after

14   Plaintiff jumped from the balcony, Obas Dep. 93:9-20, and it is undisputed that Ruskell and

15   Vindhurst examined both of Plaintiffs' legs and concluded that there were no visible, objective

16   signs of injury. Pl.'s Opp'n 3; Ruskell Dep. 34:4-8, 36:18-23; Vindhurst Dep. 18:16-24.

17   Defendants Hickey and Hoskins both testified that none of the firefighters informed them that

18   Plaintiff should be placed in C-spine restraints or transported by ambulance, Hickey Dep.129:20-

19   130:12, 149:17-23; Hoskins Dep. 61:2-63:17, and this is not contradicted by Plaintiff's testimony.

20   *See* Obas Dep. 99:5-20 (stating that he did not recall conversations between the firefighters and the

21   Task Force members). While Defendants acknowledge that firefighter Vindhurst recalled stating,

22   "hey, we can throw him in C-spine," Vindhurst Dep. 28:13-16, they point out that Vindhurst could

23   not remember to which deputy he said this. *Id.* at 28:15-22. Vindhurst also stated that he did not

24   think at the time that it was dangerous to transport Plaintiff without C-spine restraints. *Id.* at 56:18-

25   20. In addition, Fire Captain Ash testified that he, not the police, cancelled the ambulance that had

26   been summoned. Ash Dep. 59:20-60:25. Based on these facts in the record, Defendants argue that

27   Hickey and Hoskins had no reason to believe that transporting Plaintiff by patrol car, without C-

28

9

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1    spine precautions, could cause or exacerbate any injury, and thus their decision to assist him to the

2    patrol car was not objectively unreasonable.

3         Defendants argue further that the manner in which Hickey and Hoskins lifted Plaintiff to his

4    feet and walked him to the patrol car was not objectively unreasonable.  Firefighter Ruskell

5    described the manner in which Defendants picked Plaintiff up as "the normal way that they always

6    pick someone up.  Grab them behind the arms and assist them up to their feet.  Which is the best

7    way to do it."  Ruskell Dep. 44:18-20.  Although Plaintiff and a number of other witnesses testified

8    that Plaintiff appeared to be in pain as he walked to the patrol car, Obas Dep. 103:14-105:6;

9    Ruskell Dep. 44:10-45:11; Vindhurst Dep. 48:20-25, Defendants point out that he did not yell

10   loudly or scream in pain, Obas Dep. 103:19-105:7-14, and witnesses stated that he did not fall or

11   sag to the ground when assisted to his feet.  Ash Dep. 67:18-20; Ruskell Dep. 77:19-78:5.  The

12   firefighters were still at the scene at this point, and none of them attempted to intercede or

13   suggested that Defendants stop so that Plaintiff could be reexamined.  Ash Dep. 65:11-14, 68:5-13.

14   Based on these facts, Defendants argue that they did not use excessive force of any kind and had no

15   reason to believe that assisting Plaintiff to the patrol car could cause him any harm.

16        In opposing Defendant's motion, Plaintiff makes two main arguments.  First, Plaintiff

17   contends that there is a material factual dispute regarding what the EMT-firefighters recommended

18   to the officers and whether Defendants Hickey and Hoskins unreasonably ignored their

19   recommendations.  Plaintiff argues that the deposition testimony of the EMT-firefighters calls into

20   question the Defendants' claim that Plaintiff was "cleared" for transport via patrol car and indicates

21   that Defendants in fact rejected the recommendation that Plaintiff be transported via ambulance

22   with C-spine precautions.   In making this argument, Plaintiff draws heavily on deposition

23   testimony from firefighter Vindhurst, who examined Plaintiff while several officers, including

24   Hickey and Hoskins, stood nearby.  Hickey Dep. 148:15-21.  Hickey and Hoskins testified that the

25   EMTs cleared Plaintiff to be transported by patrol car.  Hickey Dep. 129:20-130:12; Hoskins Dep.

26   59:24-61:1.  Vindhurst, however, did not recall the law enforcement officers asking whether they

27   could transport Plaintiff themselves.  Vindhurst Dep. 57:14-17.  Vindhurst testified that he

28

**United States District Court**
For the Northern District of California

10

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   recommended to at least one officer that Plaintiff be placed in C-spine precautions.  Vindhurst Dep.

2   26:17-25 ("Q: So you did recommend to at least one officer that he could be put in C-spine since

3   he fell off of a second story?  A: Absolutely. . . .  Q: Was that your recommendation, or just to say,

4   hey, here's a possibility?  A: Um, it was my recommendation.").  Vindhurst also stated that the

5   officers did not want him to put Plaintiff in C-spine precautions.  Vindhurst Dep. 30:15 ("They

6   didn't want me putting him in C-spine."); *id.* at 38:15-16 ("The sheriffs didn't want us putting him

7   in C-Spine.  They wanted to take him in.").  Although Vindhurst could not recall or describe the

8   officer to whom he recommended C-spine precautions, Plaintiff argues that Hickey's and

9   Hoskins's own deposition testimony establishes that they were the officers who communicated

10  with the firefighters regarding Plaintiff's medical status and transport.  Hickey Dep. 129:20-131:2;

11  Hoskins Dep. 60:16-21.

12      As Defendants point out, Vindhurst's deposition testimony is somewhat equivocal.

13  Although he indicated at one point that he recommended putting Plaintiff in C-spine precautions,

14  he subsequently stated that he "didn't have a conversation with law enforcement," but merely

15  "looked up and said hey we can throw him into C-spine."  Vindhurst depo, 28:13-15.  Plaintiff

16  notes, however, that other evidence supports a finding that Vindhurst affirmatively recommended

17  immobilizing Plaintiff and transporting him by ambulance.  Firefighter Ruskell testified that the

18  firefighters always recommend transporting injured patients by ambulance and stated that they

19  would not likely have told law enforcement that Plaintiff was cleared to be transported via patrol

20  car.  Ruskell Dep. 42:9-43:20, 46:13-23.  The incident report prepared by Captain Ash also states

21  that fire department personnel offered to place Plaintiff in C-spine precautions and that the

22  ambulance was called off at the request of law enforcement:

23          AMR Medic 31 arrived at scene and was cancelled at the request of law
            enforcement.  E5211 personnel offered to place the [patient] in cspine precautions
24          and officers advised they would transport the [patient] to the hospital without c-
            spine precautions.
25

26  Ash Dep. 108:9-109:25, Ex. 5.  Firefighter Ruskell's testimony also suggests that the officers'

27  decision to transport Plaintiff via patrol car deviated from ordinary procedure.  *See* Ruskell Dep. at

28

11

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   42:24-43:3 ("We always recommend someone going with the ambulance because it's a safer

2   choice.  But I don't have any specific instances off the top of my head where the police officers

3   wanted to transport the patient.  Other than this one I guess.").  Based on this testimony, Plaintiff

4   argues that there is a genuine factual dispute regarding the EMTs' recommendations as to how

5   Plaintiff should be transported from the scene.  He claims that the dispute is material to his Fourth

6   Amendment claim because the Defendants themselves have acknowledged that ignoring an EMT's

7   recommendation to transport a fall victim via ambulance would be unreasonable.  Hickey Dep.

8   173:14-18; Hoskins Dep. 88:5-12.  Plaintiff thus argues that summary judgment is inappropriate.

9        In his second argument opposing summary judgment, Plaintiff claims that even if

10  Defendants' initial decision to decline C-spine precautions and transport Plaintiff by patrol car was

11  reasonable, it was objectively unreasonable to force Plaintiff to *continue* walking despite his

12  complaints of pain and visible limp.  It is undisputed that Plaintiff made some sound of pain when

13  he was set on his feet, Ruskell Dep. 44:21-23; Vindhurst Dec. 41:18-25; Hickey Dep.144: 16-

14  145:3; West Dep. 65:1-4, and Plaintiff testified that he felt a popping sensation that coincided with

15  an increase in the pain in his leg.  Obas Dep. 107:2-14, 108:11-21.  Plaintiff also stated that he

16  repeatedly told Defendants that he could not walk, Obas Dep. 107:17-18, and other witnesses,

17  including Defendant Hickey, confirmed that Plaintiff appeared to be limping and complained of

18  pain fairly loudly at least once, and possibly several times, on the way to the patrol car.  Hickey

19  Dep. 146:4-5; West Dep. 77:3-16; Vindhurst Dep. 42:5-12, 48:20-22; Hoskins Dep. 81:18-82:8.

20  Firefighter Vindhurst testified that Plaintff was "obviously in pain" and could not stand on his own.

21  Vindhurst Dep. 41:22-25.  He stated that it struck him as "[m]orally" wrong to force Plaintiff to

22  continue to walk to the patrol car.  *Id.* at 44:13-19.  Plaintiff acknowledges that none of the EMT-

23  firefighters intervened to stop Defendants from walking Plaintiff to the car or asked that he be

24  reexamined.  Plaintiff points out, however, that the firefighters seemed to believe that once the

25  officers decided to transport Plaintiff themselves, they lacked authority to challenge that decision.

26  Ruskell Dep. 46:2-5; Vindhurst Dep. 26:4-9.  Plaintiff argues that based on the undisputed facts

27  that Plaintiff fell from a second-story balcony and complained of pain as he limped to the patrol

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

car, it was objectively unreasonable for Defendants to force Plaintiff to keep walking to the patrol car.  Indeed, Plaintiff contends that the undisputed facts justify granting summary judgment in favor of Plaintiff on this issue.

Based on the record currently before the Court, and drawing all reasonable inferences in favor of Plaintiff, it appears that a reasonable jury could find the facts as follows: Plaintiff had fallen nearly 13 feet and was visibly in significant pain; basic examination by the EMT-firefighters revealed no visible injuries; the EMTs recommended, or at least suggested, that Plaintiff be put in C-spine precautions and transported by ambulance, and did not "clear" him to be transported by patrol car; and Plaintiff unequivocally expressed pain when set upon his feet, repeatedly told officers that he could not walk, and in fact experienced severe pain in his legs as he was forced to walk, with some but not total support, to the patrol car.  Additionally, the undisputed facts suggest that Plaintiff expressed so much pain once in the patrol car that officers took him directly to the hospital, rather than to county jail, and that hospital staff noted a visible deformity in Plaintiff's leg.  Based on the facts in the record, therefore, a jury could also find that forcing Defendant to walk to the patrol car exacerbated his injuries.

Whether these facts, if found by the jury, are sufficient to make out a Fourth Amendment violation presents a close question.  Plaintiff has not alleged that he was dragged or pulled across the pavement, nor has he suggested that the pain was so great that he was forced to cry out or collapse to the ground.  Nonetheless, a reasonable jury could find that forcing Plaintiff to walk caused him significant additional pain and exacerbated the injury he incurred in jumping from the balcony.  Such an intrusion is not insignificant, and the countervailing government interest, by contrast, is quite weak.  *See Santos*, 287 F.3d at 853 (stating that the excessive force analysis requires balancing the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake).  This is not a case in which Defendants were "forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397.  At the time that Defendants forced him to stand and walk, Plaintiff was handcuffed with his hands behind his back and since jumping from the balcony had

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   not attempted to resist or evade arrest.  The scene was secure, and an ambulance was on its way.

2   While transporting Plaintiff by ambulance might have led to some delay, there is no indication that

3   it would have raised safety concerns or given Plaintiff an opportunity to escape.

4          On the other hand, the fact that trained EMTs had examined Plaintiff and found no visible

5   injury before Defendants forced him to his feet does make this case somewhat unusual.  Plaintiff

6   cites to a number of cases denying summary judgment where officers had forced an injured suspect

7   to walk to a patrol car or ambulance.  While some of these cases are analogous in other respects, [2]

8   *see Bailey v. Oakdale Police Dept.*, No. 1:05-CV-00113, 2007 WL 1792057 (E.D. Cal. June 19,

9   2007); *Stockton v. Auren*, Civil No. 07-556, 2008 WL 1994992 (D. Minn. May 5, 2008), they do

10  not present a situation in which trained EMTs found no visible injuries and then did not object as

11  law enforcement officers forced the plaintiff to walk.  The Court agrees that this difference is

12  relevant, and that the EMTs' finding that Plaintiff had no visible injuries makes this case a closer

13  call.  Nonetheless, Plaintiff has shown that a genuine dispute exists regarding the communications

14  between the EMTs and the Defendant officers, as well as the extent and visibility of the pain

15  Plaintiff experienced during the walk to the patrol car.  There is support in the record for Plaintiff's

16  claims that the EMTs recommended that Plaintiff be transported by ambulance in C-spine

17  restraints, that they did not authorize transporting him by patrol car, and that Plaintiff

18  unequivocally expressed pain and inability to walk to Defendants Hickey and Hoskins.  The Court

19  cannot determine exactly what was recommended and how much pain Plaintiff exhibited without

20  carefully weighing the evidence and making credibility determinations.  These determinations are

21  reserved for a jury and cannot be made by the Court on summary judgment.  Drawing all

22  reasonable inferences in the light most favorable Plaintiff, however, the Court agrees with Plaintiff

23  that a jury could find it objectively unreasonable for Hickey and Hoskins to force Plaintiff to walk

24  _____

25  [2] Other cases that Plaintiff cites, however, present distinctly more extreme facts than presented here
    and thus are not entirely on point.  In *Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006), for
26  instance, the police allegedly dragged the injured plaintiff down three flights of stairs by the
    handcuffs they had used to fasten his hands in front of him, and in *Adams v. Bryant*, No. Civ.A. G-
27  03-542, 2005 WL 1711866, at *1 (S.D. Tex. July 21, 2005), the plaintiff allegedly "collapsed to the
    ground in searing pain," was then dragged by the handcuffs, and was in so much pain that he
28  defecated on himself.

14

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    to the patrol car, against the EMT's recommendations, rather than waiting to be transported in an

2    ambulance.  Accordingly, the Court concludes that there is a genuine issue of material fact as to

3    whether Defendants' actions violated the Fourth Amendment.

4                                **b.  Immunity Inquiry**

5              Because the Court has found that Plaintiff's factual allegations, if true, may constitute a

6    Fourth Amendment violation, the Court must proceed to the second step in the qualified immunity

7    analysis: whether Plaintiff's rights were clearly established such that a reasonable officer would

8    have known that the conduct alleged was unlawful.  *Drummond ex rel. Drummond v. City of*

9    *Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003).  There is no question that the basic right to be free

10   of excessive use of force was clearly established in 2008.  The immunity inquiry, however, is more

11   specific.  The Court must determine whether it would have been clear to a reasonable officer in

12   Defendants' position that his conduct was unlawful in the situation he confronted.  *Id.* This does

13   not mean that there must be a prior case "on 'all fours' with the facts of the instant case," *Rogers v.*

14   *County of San Joaquin*, 487 F.3d 1288, 1297 (9th Cir. 2007), or that "courts must have agreed upon

15   the precise formulation of the standard."  *Saucier*, 533 U.S. at 202.  Rather, a right is clearly

16   established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would

17   understand that what he is doing violates that right."  *Id.*

18             In addressing this issue, Defendants argue, based on their version of the facts, that since the

19   EMTs had cleared Plaintiff for transport by patrol car, Plaintiff must be asserting "the right of an

20   arrestee to be placed in cervical spine restraints . . . and be transported by ambulance to the

21   hospital, even though medical personnel on the scene confirmed that the arrestee did not suffer

22   injury to his head, neck, or spine."  Defs.' Mot. 8.  The Court agrees that such a right, if asserted,

23   may not be clearly established.  The right asserted by Plaintiff, however, is better characterized as

24   the right of an arrestee not to be forced to walk to a patrol car when EMTs on the scene have

25   recommended that he be transported by ambulance and when walking visibly causes him pain.

26             Here, the Court finds that the immunity inquiry, like the constitutional inquiry, turns on

27   genuinely disputed factual issues.  Defendants Hickey and Hoskins both testified that it would be

28

                                                                15

1   objectively unreasonable to ignore the advice of EMTs on the scene.  Hickey Dep. 173:14-18;

2   Hoskins Dep. 88:5-12.  At oral argument, Defendants' counsel also conceded that if the EMTs

3   unequivocally recommended that Plaintiff be transported by ambulance or placed in c-spine

4   restraints, it would be objectively unreasonable to ignore that recommendation.  Thus, no party has

5   argued that Defendants would be entitled to qualified immunity if Firefighter Vindhurst

6   affirmatively recommended that Plaintiff be immobilized and transported by ambulance directly to

7   the hospital.  The Court has found that a genuine factual dispute exists regarding what Vindhurst

8   recommended to Defendants Hoskins and Hickey, and this factual dispute is also "material to a

9   proper determination of the reasonableness of the officers' belief in the legality of their actions."

10  *Espinosa*, 598 F.3d at 532.  Accordingly, a grant of summary judgment is not appropriate.[3]

11          Based on the foregoing analysis, the Court finds that Plaintiff has carried his burden to

12  show genuine issues of material fact regarding whether the individual defendants violated his

13  Fourth Amendment rights and whether those rights were clearly established.  The Court therefore

14  DENIES Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim as to

15  Defendants Hickey and Hoskins.

16          **B.  Battery**

17          In addition to his Fourth Amendment claim, Plaintiff also brings a state law battery claim

18  against Defendants Hickey, Hoskins, and the County of Monterey.  Under California law, law

19  _____

[3] In his opposition brief, Plaintiff argues that even if the EMTs cleared Plaintiff for transport via
20  patrol car, as Defendants contend, the Court could still find a Fourth Amendment violation based
    solely on Defendants' decision to force Plaintiff to continue walking despite his complaints of pain.
21  If Plaintiff's case were based solely on this secondary claim, Defendants would likely be entitled to
    qualified immunity.  As discussed above, Plaintiff has found a number of analogous cases
22  indicating that forcing an arrestee to walk when he persistently complains of pain violates the
    Constitution.  *See Bailey*, 2007 WL 1792057; *Stockton*, 2008 WL 1994992.  This case presents a
23  novel situation, however, in that EMTs had examined Plaintiff and found no objective evidence of
    injury.  If, as Defendants contend, the EMTs had examined Plaintiff and affirmatively stated that he
24  could walk to the patrol car, it would likely not be clear to a reasonable officer that assisting
    Plaintiff to walk to the patrol car could be unlawful.  As the record stands now, however, there is a
25  genuine factual dispute regarding whether the EMTs recommended that Plaintiff be transported by
    ambulance or cleared him to be assisted to the patrol car.  If Plaintiff is able to show that the EMTs
26  did in fact recommend transport by ambulance, then he may be able to establish that Defendants
    were objectively unreasonable both in their initial decision to lift Plaintiff to his feet and their
27  decision to force him to walk all the way to the patrol car.  The Court thus denies summary
    judgment on this basis.

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1   enforcement officers are explicitly permitted to use reasonable force to effect an arrest, prevent

2   escape, or overcome the resistance of a person being arrested.  Cal. Penal Code § 835a.

3   Accordingly, a law enforcement officer who uses force in the course of an arrest is not liable for

4   battery unless the plaintiff proves that the force used was unreasonable.  *Edson v. City of Anaheim*,

5   63 Cal. App. 4th 1269, 1272-73, 74 Cal. Rptr. 2d 614 (Cal. Ct. App. 1998).  As both parties

6   recognize, battery claims brought under California law are analyzed under the reasonableness

7   standard used to evaluate Fourth Amendment claims and require the same evidentiary showing.

8   *See id.* at 1274; *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1413, 115 Cal. Rptr. 2d 269

9   (Cal. Ct. App. 2002); *Saman v. Robbins*, 173 F.3d 1150, 1156-57 & n.6 (9th Cir. 1999).  Thus, the

10  analysis of Plaintiff's Section 1983 claim applies equally to Plaintiff's claim for battery.

11  Accordingly, based on the analysis above, the Court finds that Plaintiff has raised a genuine issue

12  of material fact as to whether the conduct of Defendants Hickey and Hoskins was unreasonable and

13  therefore constituted a battery.  Additionally, because Monterey County is liable for the acts or

14  omissions of its employees if those acts or omissions would have given rise to a cause of action

15  against that employee, Cal. Gov't Code § 815.2(a), there is also a genuine issue of material fact

16  regarding the County's liability.

17          **C.  Negligence**

18          Plaintiff also brings a state law negligence claim against the County and individual

19  defendants, alleging that Defendants breached a duty to use reasonable care in carrying out

20  Plaintiff's arrest, including a duty to defer to the advice of EMTs and to avoid causing unnecessary

21  harm or pain.  SAC ¶ 23.  Defendants argue that this claim must fail because Defendants Hickey

22  and Hoskins are immune under Section 820.2 of the Government Claims Act and Section 3333.3 of

23  the California Civil Code.  Moreover, if Hickey and Hoskins are immune, then the County would

24  also be immune from liability.  *See* Cal. Gov't Code § 815.2(b) ("Except as otherwise provided by

25  statute, a public entity is not liable for an injury resulting from an act or omission of an employee

26  of the public entity where the employee is immune from liability.")  Defendants thus seek summary

27  judgment on Plaintiff's negligence claim.

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### 1. Government Code § 820.2 immunity for discretionary acts

The Government Claims Act provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. It is clear from California case law, however, that "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Barner v. Leeds*, 24 Cal. 4th 676, 684-85, 102 Cal. Rptr. 2d 97 (2000). In analyzing the discretionary immunity conferred by § 820.2, the California Supreme Court has drawn a distinction between policy decisions, which are immunized, and ministerial or operational decisions, which are not. In *Caldwell v. Montoya*, the California Supreme Court explained that immunity is reserved for areas of quasi-legislative policy-making and applies only to "*deliberate and considered* policy decisions, in which a [conscious] balancing [of] risks and advantages . . . took place." 10 Cal. 4th 972, 981, 42 Cal. Rptr. 2d 842 (1995) (quotation makes and citation omitted). In contrast, day-to-day operational decisions are not immunized by § 820.2, even if they require "exercise of considerable judgmental skills." *Barner*, 24 Cal. 4th at 686-87. Thus, while a public defender's initial decision to represent a particular defendant may be a discretionary decision immunized by § 820.2, the decisions made and actions undertaken during the course of the representation are not immunized, even though "such legal representation entails difficult choices among complex alternatives and the exercise of professional skill." *Id.* at 688, 691. Similarly, while a police officer's initial decision to investigate a car accident may constitute a discretionary decision immunized by § 820.2, the officer is not immunized from any negligence in *conducting* the investigation. *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261-262 74 Cal. Rptr. 389 (1969). These California Supreme Court cases suggest that the initial, considered decision to conduct a tactical operation to apprehend Plaintiff on October 23, 2008, would be immunized by § 820.2, but the decisions made during the course of the tactical operation and arrest would not. Thus, it appears that § 820.2 does not immunize Defendants for any negligence that occurred during Plaintiff's arrest and transport to the patrol car.

18

1          Despite this relatively clear precedent, Defendants have identified a number of state and

2     district court decisions that appear to apply § 820.2 immunity to decisions made by law

3     enforcement officers in the course of an arrest.  Two decisions from the Southern District of

4     California state that § 820.2 grants immunity to law enforcement officers for decisions made in the

5     course of an arrest unless they use unreasonable force.  *Price v. County of San Diego*, 990 F. Supp.

6     1230, 1244 (S.D. Cal. 1998)[4]; *Reynolds v. County of San Diego*, 858 F. Supp. 1064, 1074 (S.D.

7     Cal. 1994).  Defendants also cite a California Court of Appeal decision that implies that § 820.2

8     provides immunity from liability in wrongful death actions as long as the police officer's use of

9     deadly force was reasonable.  *See Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349,

10    54 Cal. Rptr. 2d 772 (Cal. Ct. App. 1996) ("The test for determining whether a homicide was

11    justifiable under Penal Code section 196 is whether the circumstances reasonably create[d] a fear

12    of death or serious bodily harm to the officer or to another.  The same is true of Government Code

13    section 820.2, which provides immunity from liability to public employees for their discretionary

14    acts.") (quotation marks and citations omitted).

15         These decisions appear to be based on a reading of § 820.2 alongside other statutory

16    provisions that immunize law enforcement officers from liability for injuries resulting from the use

17    of reasonable force against a suspect whom they had probable cause to arrest.  *Martinez*, for

18    instance, relied primarily on the immunity granted by Penal Code § 196 for homicides "necessarily

19    committed in overcoming actual resistance to the execution of some legal process, or in the

20    discharge of any other legal duty," and mentioned § 820.2 only in passing.  47 Cal. App. 4th at

21    349.  The *Martinez* court concluded that the defendant's homicide was justified under a Fourth

22    Amendment reasonableness analysis, and that therefore any wrongful death claims were barred.

23    *Id.* at 350.  In this case, a similar statutory provision precludes liability for the use of "reasonable

24    force to effect . . . arrest, to prevent escape or to overcome resistance."  Cal. Penal Code § 835a.

25    Thus, while the Court does not agree that § 820.2 immunizes Defendants' actions, it appears that

26

27    [4] The court in *Price* actually held that § 820.2 barred the plaintiffs' wrongful death claim, but did
      not apply to their negligence cause of action.  *See Price*, 990 F. Supp. at 1245 & n.29 (finding that
28    § 820.2 does not apply to negligent acts and evaluating negligence claim on the merits).

19

**United States District Court**
For the Northern District of California

1   Plaintiff's negligence claim, which is premised on a failure to use reasonable care in carrying out

2   his arrest, will only succeed if Plaintiff can demonstrate that Defendants used unreasonable force.

3   The Court has already determined, however, that there is a genuine issue of material fact as to

4   whether Defendants used unreasonable force, and the Court cannot grant summary judgment on

5   that ground.

6                    **2.   California Civil Code § 3333.3**

7          Defendants also argue that Plaintiff's negligence claim is barred by Section 3333.3 of the

8   California Civil Code.  Section 3333.3 reads as follows: "In any action for damages based on

9   negligence, a person may not recover any damages if the plaintiff's injuries were in any way

10  proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and

11  the plaintiff has been duly convicted of that felony."  Section 3333.3 was passed by California

12  voters in 1996 as Proposition 213.  Thus, in analyzing Section 3333.3, California courts have

13  looked to "the intent of the electorate based on the language of the initiative itself" and the

14  information provided in the voter pamphlet.  *Jenkins v. County of Los Angeles*, 74 Cal. App. 4th

15  524, 531, 88 Cal. Rptr. 2d 149 (Cal. Ct. App. 1999).  The summary of the initiative prepared by the

16  Attorney General and contained in the ballot pamphlet stated that Proposition 213 "[d]enies all

17  recovery of damages to a convicted felon whose injuries were proximately caused during the

18  commission of the felony or immediate flight therefrom."  *Id.* (citing Ballot Pamp., Prop. 213, text

19  of proposed law, Gen. Elec. (Nov. 5, 1996) p. 48).  The ballot pamphlet also contained an analysis

20  by the Legislative Analyst.  This analysis stated, in relevant part:

21              Currently, in certain cases a person who is injured while breaking the law may sue
22              on the basis of another person's negligence to recover any losses resulting from
                the injury.  For example, a person convicted of a robbery who was injured
23              because he or she slipped and fell while fleeing the scene of the crime can sue to
                recover losses resulting from the injury. [¶] This measure prohibits a person
24              convicted of a felony from suing to recover any losses suffered while committing
                the crime or fleeing from the crime scene if these losses resulted from another
                person's negligence.

25  *Id.* (citing Ballot Pamp., *supra*, p. 49).  Based on this language, a California appeals court
26
27  concluded that "the intent was to prevent felons from recovering for damages that were negligently

28  inflicted during commission of the crime or during immediate flight from the crime."  *Id.* at 532.

                                          20

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    Defendants argue that Section 3333.3 should apply to this case because Plaintiff was

2  injured during his flight from the act of violating his felony probation.[5]  Defendants also suggest

3  that Section 3333.3 applies because Plaintiff was arrested based on a warrant that included several

4  felony charges, to three of which Plaintiff ultimately pled guilty.[6]  *See* Hickey Dep. 161:14-162:4;

5  Litt Decl. Ex. I.  Thus, Defendants do not suggest that Plaintiff committed a separate felony on

6  October 23, 2008, but instead rely on parole violations connected to a prior felony conviction and

7  an outstanding warrant for felonies apparently committed earlier that year.[7]  The Court must

8  therefore determine whether Plaintiff's injuries can be deemed "in any way proximately caused" by

9  Plaintiff's prior commission of felonies such that Section 3333.3 applies to his negligence claim.

10    The Court agrees with Defendants that Plaintiff cannot avoid Section 3333.3 by arguing

11  that his injuries were caused by Defendants' actions subsequent to his flight, rather than his own

12  actions in fleeing from law enforcement.  The intent of Section 3333.3 is to "require plaintiffs who

13  are felons to assume the risk of any injuries sustained during the commission of a crime or during

14  the flight to avoid apprehension for the crime," and negligence by the police during the course of

15  arrest is clearly a foreseeable risk that the statute intends felons to assume.  *Espinosa v. Kirkwood*,

16  185 Cal. App. 4th 1269, 1274-75, 111 Cal. Rptr. 3d 252 (Cal. Ct. App. 2010),

17  _____

[5] Plaintiff objects to the evidence on which Defendants rely to establish that Plaintiff was a parolee
18  at large and was in violation of parole on the night at issue.  While the Court agrees that some of
this evidence may not be admissible, the Court notes that Plaintiff's own deposition testimony
19  establishes that he was out on parole on the night of his arrest and that he believed he had a parole
warrant for not reporting to his parole officer.  Obas Dep. 16:7-10; 53:16-54:2.  Plaintiff also
20  acknowledged that a term of his parole was to have "no contact with Ermila Cortez" and that he
went to the apartment complex on October 23, 2008, to visit Ms. Cortez.  Obas Dep. 16:15-23,
21  54:8-11.  These statements would appear to be admissible as admissions by a party-opponent under
Federal Rule of Evidence 801(d)(2).

22  [6] Defendants initially submitted certified copies of these records without properly identifying them
23  or requesting judicial notice.  Plaintiff thus objected to the documents, and Defendants then filed a
belated request for judicial notice.  The Court agrees that these government records are properly
24  subject to judicial notice pursuant to Federal Rule of Evidence 201 for the limited purpose of
establishing that Plaintiff had a felony warrant and was subsequently convicted on felony charges.
25  *See Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (taking judicial notice of
conviction).  Because Plaintiff will not be prejudiced by the Court's consideration of the certified
26  records for this limited purpose, the Court grants Defendants' belated request for judicial notice.

27  [7] The arrest warrant submitted by Defendants, which lists several felony charges, is dated
September 18, 2008, and the attached Complaint indicates that the felony charges were based on
28  conduct that occurred in August 2008.  Litt Decl., Ex. I.

21

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

It is not so clear, however, that the statute is intended to cover situations like this one, in which the time between the commission of the felony and the flight from apprehension is weeks or even months.  California courts do not appear to have addressed the precise situation presented here.  However, two California decisions that analyze the scope of the statute suggest that Section 3333.3 may not apply where there is a break in the chain of events between the commission of the felony and the flight from apprehension that resulted in the plaintiff's injuries.  *See Espinosa v. Kirkwood*, 185 Cal. App. 4th at 1275 (reasoning that "[t]here was no break in the chain of events between the criminal conduct the three [plaintiffs] engaged in jointly and [the] attempt to flee in defendant's vehicle" and thus § 3333.3 should apply); *Jenkins v. County of Los Angeles*, 74 Cal. App. 4th 524, 535, 88 Cal. Rptr. 2d 149 (Cal. Ct. App. 1999) (noting argument that plaintiff went to a "place of safety" between commission of crime and flight from apprehension, but rejecting the argument as not supported by the record).  In cases like this one, where the causal connection between the felony committed and a subsequent flight from the police is attenuated or uncertain, California courts seem to require proof of more than simply the fact of the prior felony and the later flight to establish proximate cause.  *See id.* (reversing grant of summary judgment where plaintiff had committed crime four hours earlier and police were not reacting to a report of that crime when plaintiff was shot fleeing from the police).  In this case, the connection between the commission of the felony and the injury sustained is uncertain and attenuated by the passage of time.  The record does indicate that Plaintiff knew he was violating the terms of his parole and that a parole warrant had been issued based on his failure to report to his parole officer.  However, Plaintiff testified that he jumped from the balcony not to avoid arrest, but because he saw two men coming at him with guns drawn and feared for his life.  Obas Dep. 54:3-7, 71:13-17.  It is also not clear from the record whether the officers sought Plaintiff based on the felony arrest warrant or based solely on his status as a parole absconder, and it appears that Plaintiff did not know that he was wanted on new felony charges.  Obas Dep. 16:24-17:4.  In sum, the precise causal relationship between Plaintiff's prior commission of felony offenses and Plaintiff's injuries remains uncertain.  On these facts, the Court

22

United States District Court
For the Northern District of California

1  cannot find, as a matter of law, that Plaintiff's injury was proximately caused by the commission of

2  a felony or the immediate flight therefrom.

3        Based on the above analysis, the Court does not find that Defendants are immune from

4  liability on Plaintiff's negligence claim.  In addition, because the Court has found a triable issue of

5  fact as to whether Defendants conduct was objectively unreasonable, it follows that there is also a

6  triable issue of fact as to whether Defendants exercised reasonable care.  Accordingly, Defendants'

7  motion for summary judgment on Plaintiff's negligence claim is DENIED.

8      **IV. Conclusion**

9        For the foregoing reasons, the Court grants in part and denies in part Defendants' motion

10  for summary judgment.  The Court GRANTS summary judgment as to Plaintiff's § 1983 claim

11  against Monterey County.  The Court DENIES summary judgment as to all other claims.

12  **IT IS SO ORDERED.**

13

14  Dated: February 22, 2011
                       _Lucy H. Koh_

15                           LUCY H. KOH
                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 09-CV-05540-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT